UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

RICHARD WERSHE, JR.,                              Case No. 21-11686

     Plaintiff,                                F. Kay Behm
v.                                               United States District Judge

THE CITY OF DETROIT, *et. al.,*

     Defendants.
_____ /

RICHARD WERSHE, JR.,                              Case No. 22-12596

     Plaintiff,                                F. Kay Behm
                                                 United States District Judge
v.

UNITED STATES OF AMERICA,

     Defendant.
_____/

**CONSOLIDATED ORDER GRANTING DEFENDANTS' MOTIONS TO DISMISS**
**(*Wershe I,* ECF Nos. 8, 34; *Wershe II*, ECF No. 6)**
**AND DENYING AS MOOT ALL OTHER PENDING MOTIONS**
**(*Wershe I*, ECF Nos. 48, 55; *Wershe II*, ECF No. 10)**

## I.    INTRODUCTION AND PROCEDURAL HISTORY

       This consolidated opinion is issued in two separate cases filed by Plaintiff

Richard Wershe Jr.: *Wershe v. City of Detroit* ("*Wershe I*"), 21-11686, and *Wershe*

*v. United States* ("*Wershe II*"), 22-12596.  Because these two cases arise from the

same set of relevant facts and involve overlapping issues of law, they have been

consolidated for the limited purpose of issuing this opinion.[1]

Plaintiff filed his first case, *Wershe I*, on July 20, 2021, in the U.S. District

Court for the Eastern District of Michigan.  (*Wershe I,* ECF No. 1).  In his first

amended complaint, filed on September 14, 2021, Plaintiff brings a number of

claims under 42 U.S.C. § 1983 and *Bivens v. Six Unknown Named Agents of Fed.*

*Bureau of Narcotics*, 403 U.S. 388 (1971), for violations of his constitutional rights.

(ECF No. 4).  *Wershe I* was originally before District Judge Laurie J. Michelson, but

was reassigned to District Judge Shalina D. Kumar on February 15, 2022, and

subsequently to the undersigned on February 6, 2023.  Plaintiff filed his second

case, *Wershe II*, on October 28, 2022, in the U.S. District Court for the Eastern

District of Michigan.  (*Wershe II*, ECF No. 1).  In this case, Plaintiff brought seven

tort claims under Michigan law pursuant to the Federal Tort Claims Act (FTCA), 28

U.S.C. § 1346(b).  *Id*.  *Wershe II* was originally before District Judge Denise Paige

Hood, but was reassigned to District Judge Shalina D. Kumar on November 8,

2022, and subsequently to the undersigned on February 6, 2023.

---

[1] The parties were asked at the July 19, 2023, hearing whether they had any specific objections to consolidating these cases for the purposes of issuing this opinion.  No objections were raised.

These cases are now before this court on a number of pending motions.  In *Wershe I,* Defendant City of Detroit filed a motion to dismiss on September 30, 2021.  (*Wershe I*, ECF No. 8).  Defendants Kevin Greene and William Jasper filed a notice of joinder/concurrence in this motion on October 21, 2021.  (*Wershe I*, ECF No. 14).  On April 22, 2022, Defendants Carol Dixon, Herman Groman, Lynn A. Helland, and Edward James King (the "*Bivens* Defendants") filed a motion to dismiss the relevant counts against them.  (*Wershe I*, ECF No. 34).  On July 6, 2022, Plaintiff filed a motion to amend/correct Plaintiff's verified complaint seeking to add the United States as a Defendant.  (*Wershe I*, ECF No. 8).  On November 2, 2022, the *Bivens* Defendants filed a supplemental brief in response to the filing of *Wershe II*, (*Wershe I*, ECF No. 54), and Plaintiff filed a motion to strike their supplemental brief on November 10, 2022.  (*Wershe I*, ECF No. 55).  In *Wershe II*, Defendant filed a motion to dismiss on January 17, 2023.  (*Wershe II*, ECF No. 6).  On April 17, 2023, Plaintiff filed a motion for leave to file an exhibit in the traditional manner.  (*Wershe II*, ECF No. 10).  These motions are all currently pending before the court.

On July 19, 2023, the court held a hearing in both cases, *Wershe I* and *Wershe II*.  Oral argument was "limited in scope to the statutes of limitations applicable to Plaintiff's claims."  (*See Wershe I,* ECF No. 58; *Wershe II*, ECF No. 12).

Following the hearing, Plaintiff filed a letter with the court "correct[ing] an assertion…made during oral argument." (*Wershe I,* ECF No. 64; *Wershe II*, ECF No. 16).  The parties were given an opportunity to file a response to Plaintiff's letter (*See Wershe I,* ECF Nos. 68, 70; *Wershe II*, ECF No. 18), and Plaintiff filed a reply on August 14, 2023, (*Wershe I*, ECF No. 72).  The court has considered all of the arguments presented in the written motions, supplemental briefs, and oral argument, and finds that Plaintiff's claims were untimely and are barred by the relevant statutes of limitations.  Likewise, Defendants' motions to dismiss (*Wershe I,* ECF Nos. 8, 34; *Wershe II*, ECF No. 6) are **GRANTED**.

## II.    FACTUAL BACKGROUND

As discussed in more detail below, this case is before the court on a number of motions to dismiss brought pursuant to Fed. R. Civ. P. 12(b)(6).  Because all facts must be viewed in the light most favorable to Plaintiff, the court will rely on Plaintiff's statement of the lengthy facts of this case. [2]  *See Directv v. Treesh*, 487 F.3d 471, 476 (6th Cir. 2007) ("In reviewing a motion to dismiss, we

---

[2] Plaintiff urges the court to review his submitted Exhibit F, the "White Boy" documentary, which was cited numerous times by both Plaintiff and Defendants in their pleadings.  (ECF No. 72, PageID.1399).  The court emphasizes that it has not viewed this documentary and does not believe that it can be relied upon to provide an objectively reliable retelling of Plaintiff's story.  Likewise, the court will solely consider the facts provided in Plaintiff's complaint.

construe the complaint in the light most favorable to the plaintiff, accept its allegations as true, and draw all reasonable inferences in favor of the plaintiff.").

Plaintiff Richard Wershe Jr., known widely in the media as "White Boy Rick," alleges he was "indoctrinated into criminal society" as a child by officers from the Federal Bureau of Investigation (FBI) and the Detroit Police Department (DPD). (*Wershe I*, ECF No. 4, PageID.105). The facts relevant to Plaintiff's claims begin in the 1980s, when Plaintiff was recruited by FBI agents to serve as a confidential informant through his father, Richard Wershe Sr. *Id.*, PageID.87. Plaintiff was subsequently introduced to officers from the DPD and began working as a confidential informant for a joint FBI/DPD "taskforce" tackling the drug trade in Detroit. *Id.*, PageID.88. When he was 15 years old, Plaintiff alleges that taskforce officers began sending him to drug houses to "purchase drugs...return with the drugs, allow them to take a small sampling of the drugs, and then leave with the remainder of the drugs, with instructions to sell them." *Id.*, PageID.90.

As his involvement in the drug trade increased, Plaintiff alleges he was "shot at point blank range with a .357 magnum, cutting his large intestine in half..." in an attempt to assassinate him. *Id.*, PageID.91. Even after this assassination attempt, Plaintiff alleges that the FBI and DPD officers continued to ask him to go undercover to sell drugs, both in Detroit and, on one occasion, Las

Vegas.  *Id.*, PageID.92.  By 1987, media coverage of his involvement in the drug

trade exploded, with reporters coining the name "White Boy Rick."  *Id.*

On May 22, 1987, Plaintiff, at the age of 17, was arrested after a 911 call

suggested he was in possession of a large box of cocaine.  *Id.*, PageID.94.  Later

that year, Plaintiff was convicted of possessing 7,933.8 grams (17.45 pounds) of

cocaine.  (*Wershe I,* ECF No. 34, PageID.434).  Pursuant to Michigan's "650-lifer

law," Mich. Comp. Laws § 333.7401, Plaintiff was sentenced to life in prison

without the possibility of parole. [3] (*Wershe I,* ECF No. 4, PageID.95).

While he was in prison, Plaintiff was again solicited to assist in a large-scale

sting operation intended to take down corrupt DPD officers and politicians,

"Operation Backbone."  *Id.*, PageID.96.  Plaintiff alleges he was told by Defendant

Helland that, if he agreed to help them, "they would always do everything in their

power to get Plaintiff released from prison."  *Id*.  Plaintiff agreed to help.  *Id.*  As a

result of his participation in "Operation Backbone," Defendant Helland arranged

to have Plaintiff placed in the prisoner witness protection program "out of fear

that elements of the corrupt Detroit Police Department that he had helped to

---

[3] At the time of Plaintiff's sentencing, the 650-lifer law mandated that anyone convicted of possessing 650 grams of cocaine or more be sentenced to life without the possibility of parole. (*Wershe I*, ECF No. 4, PageID.95).  However, after Plaintiff's sentencing, the 650-lifer law was amended to change the mandatory sentence requirement to 20 years to life, with the possibility of parole.  *Id.* n.3.

strike a blow, would be able to retaliate against him while he was imprisoned."
*Id*.  Plaintiff was given a fake identity and was relocated to an unknown prison
facility.  *Id.*

In 1992, Plaintiff was asked by federal agents from the Drug Enforcement
Agency (DEA) and Assistant United States Attorneys (AUSAs) from the Eastern
District of Michigan to testify before a grand jury against members of the Best
Friends Gang.  *Id.*, PageID.97.  Plaintiff agreed on the condition that "[Defendant]
King do everything in his power going forward to assist Plaintiff in getting his
sentence commuted."  *Id*., PageID.98.  Plaintiff alleges he was told that his
testimony "would always be sealed and never be released."  *Id.*, PageID.97.

Following amendments to the 650-lifer law, Plaintiff became eligible for
parole in 2002.  *Id.*, PageID.98.  In 2003, Plaintiff was scheduled for a hearing
before the Michigan Parole Board.  *Id*.  At his hearing, despite what he had been
told earlier about the Defendants' commitment to advocating for his parole, he
was informed that the U.S. Attorney's office no longer supported his release.  *Id.*,
PageID.99-100.  Further, at his parole hearing DPD officers testified and quoted
directly from his sealed grand jury testimony.  *Id*., PageID.100.  Plaintiff argues
that this information from his grand jury testimony was "the dispositive factor in
the Board's decision not to allow Plaintiff parole, as it associated Plaintiff with the

very dangerous Best Friends gang network." *Id*. After his hearing, Plaintiff was denied parole. *Id*.

In 2005, Plaintiff was charged with racketeering for "attempt[ing] to facilitate the purchase of a car for his mother from Florida while in prison."[4] *Id.*, PageID.103-04. Plaintiff eventually pleaded guilty and was sentenced to five years imprisonment in Florida. *Id.*, PageID.104. In 2017, Plaintiff was granted parole by the Michigan Parole Board, and was immediately transferred to a Florida prison to serve his sentence on the Florida charges. *Id.*, PageID.105. Plaintiff was released from prison on July 20, 2020, after 32 years and 7 months. *Id*.

## III.    RELEVANT LEGAL STANDARDS

### A.    Rule 12(b)(6)

A motion to dismiss brought under Federal Rule of Civil Procedure 12(b)(6) alleges that a complaint fails to state a claim upon which relief may be granted. Fed. R. Civ. P. 12(b)(6). Although the statute of limitations is typically raised as an affirmative defense, and "a plaintiff generally need not plead the lack of affirmative defenses to state a valid claim," the court may dismiss a claim under Fed. R. Civ. P. 12(b)(6) if "the allegations in the complaint affirmatively show that

---

[4] Defendants contest Plaintiff's characterization of these charges, arguing they actually arose out of Plaintiff's involvement in a large-scale "auto theft ring" from prison. (*Wershe I,* ECF No. 6, PageID.77).

the claim is time-barred." *Cataldo v. U.S. Steel Corp.*, 676 F.3d 542, 547 (6th Cir. 2012). In considering a motion to dismiss for failure to state a claim under Fed. R. Civ. P. 12(b)(6), a complaint may be dismissed "only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." *Morgan v. Church's Fried Chicken*, 829 F.2d 10, 12 (6th Cir. 1987). The court must "construe the complaint in the light most favorable to the plaintiff, accept its allegations as true, and draw all reasonable inferences in favor of the plaintiff." *DirectTV v. Treesh*, 487 F.3d 471, 476 (6th Cir. 2007).

Generally, if a court considers matters outside of the pleadings, the motion must be converted into one for summary judgment under Rule 56. *Ashh, Inc. v. All About It, LLC*, 475 F. Supp. 3d 676, 679 (E.D. Mich. 2020). However, a court may consider certain exhibits in a motion to dismiss, including "the Complaint and any exhibits attached thereto, public records, items appearing in the record of the case and exhibits attached to defendant's motion to dismiss so long as they are referred to in the Complaint and are central to the claims contained therein." *Id.* at 678 (citing *Bassett v. Nat'l Coll. Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008)). Plaintiff has filed a number of exhibits in response to the various motions to dismiss including: (1) the affidavit of Richard Wershe Jr., (2) the second affidavit of Richard Wershe, Jr., (3) the November 17, 2021 report of Dr. Larry

Friedberg, PhD, (4) the curriculum vitae of Dr. Larry Friedberg, PhD, (5) excerpts of the transcript from the "White Boy" documentary, (6) the "White Boy" documentary DVD, (7) an order from the Michigan Court of Appeals regarding his sentencing, (8) the affidavit of Michelle MacDonald, and (9) the affidavit of Lynne Hoover.  (*Wershe I*, ECF No. 19-1; *Wershe II*, ECF No. 9-1).  Additionally, the *Bivens* Defendants submitted a lengthy list of materials from the other legal actions in which Plaintiff was a party as an attachment to their motion to dismiss.  (*Wershe I*, ECF No. 34-1).  Because this case is before the court as a motion to dismiss, the court will rely only on the information contained in the two complaints and pleadings, as well as any exhibits "referred to in the Complaint [that] are central to the claims contained therein."  *Ashh, Inc.*, 475 F. Supp. 3d at 678.  Given that many of the submitted exhibits provide information that is well outside of the complaint's central claims, they will be disregarded at this stage.

  B. <u>Applicable Statutes of Limitations</u>

   Generally, a plaintiff's claims against a defendant must be filed within a reasonable time after their injury occurred or was discovered.  For this reason, the law creates certain statutes of limitations establishing the time limit for bringing a lawsuit, based on when the claim accrued.  STATUTE OF LIMITATIONS, Black's Law Dictionary (11th ed. 2019).  Plaintiff brings a number of claims against

the relevant Defendants in both *Wershe I* and *Wershe II,* which fall into one of

three categories: (1) § 1983 claims, (2) *Bivens* claims, and (3) claims brought

pursuant to the Federal Tort Claims Act. (*See Wershe I,* ECF No. 4; *Wershe II*, ECF

No. 1). Each type of claim is subject to different rules governing the relevant

statute of limitations.

   i.   *Section 1983 and Bivens Claims*

Title 42 U.S.C. § 1983 provides a federal remedy when state officials act to

deprive an individual of "any rights, privileges, or immunities secured by the

Constitution and laws." *Golden State Transit Corp. v. City of Los Angeles*, 493 U.S.

103, 105 (1989). Section 1983 does not have a defined limitations period and,

thus, the Supreme Court has held that the statute of limitations for § 1983 claims

is governed by the relevant state statute of limitations for personal injury claims.

*See Wilson v. Garcia*, 471 U.S. 261, 272 (1985). Under Michigan law, a claim for

injury to person or property must be filed within "3 years after the time of the

death or injury for all actions to recover damages for the death of a person or for

injury to a person or property." Mich. Comp. Laws § 600.5805(2); *see also Rapp v.*

*Putman*, 644 F. App'x 621, 626 (6th Cir. 2016) (holding the statute of limitations

for § 1983 claims in Michigan is "the three-year statute of limitations for personal

injury claims.").

Similarly, *Bivens* actions allow individuals to bring claims against federal agents when they, "acting under color of [their] authority," violate an individual's Constitutional rights. *See Bivens*, 403 U.S. at 489; *Vector Rsch., Inc. v. Howard & Howard Att'ys P.C.*, 76 F.3d 692, 698 (6th Cir. 1996). *Bivens* claims are "governed by the same statute of limitations as [] claim[s] under 42 U.S.C. § 1983." *Zappone v. United States,* 870 F.3d 551, 559 (6th Cir. 2017). Likewise, Plaintiff's *Bivens* claims are also subject to Michigan's three-year statute of limitations for personal injury. In this case, "all parties appear to agree that MCL 600.5805(2) is the source of the three-year limitations period for Plaintiff's §1983 and Biven's [sic] claims." (*Wershe I,* ECF No. 63, PageID.1354).

      ii.    *FTCA Claims*

Although sovereign immunity generally shields the United States from being sued directly, the Federal Tort Claims Act (FTCA) waives that immunity for certain tort claims. *Zappone*, 870 F.3d at 555 (citing *Dep't of the Army v. Blue Fox, Inc.*, 525 U.S. 255, 260 (1999)). Specifically, a plaintiff may sue the federal government "for personal injury or property damage 'caused by the negligent or wrongful act or omission' of government employees acting within the scope of their employment." *Id.* (citations omitted). To bring a timely claim under the FTCA, a plaintiff must first present an administrative claim "in writing to the

appropriate Federal agency within two years after such claim accrues." 28 U.S.C.

§ 2401(b). Then, the Plaintiff must file their FTCA claim "within six months after

the date of mailing…" *Id.* "If he fails to meet either of these time constraints, his

'tort claim against the United States shall be forever barred.'" *Id.*; *Zappone*, 870

F.3d at 555.

      C.    <u>Accrual of Plaintiff's Claims</u>

      Generally, a statute of limitations begins to run at the point in time when a

claim "accrues," "that is, when a plaintiff is aware or should be aware of being

injured by the defendant's wrongful act." *Singleton v. City of New York*, 632 F.2d

185, 191 (2d Cir. 1980); *see also Kelly v. Burks*, 415 F.3d 558, 561 (6th Cir. 2005).

A *Bivens* claim or a claim brought under 42 U.S.C. § 1983 accrues when a plaintiff

"ha[s] reason to know of the alleged [] injury." *Kelly*, 415 F.3d at 561. Similarly, a

claim brought under the FTCA generally accrues "at the time of the plaintiff's

injury." *Amburgey v. United States*, 733 F.3d 633, 637 (6th Cir. 2013) (citing

*United States v. Kubrick*, 444 U.S. 111, 111 (1979)).

      In both complaints, Plaintiff alleges he has suffered a number of injuries,

including "[being] shot in the abdomen at point blank range," "residual physical

and psychological injuries…including but not limited to [] severe anxiety, severe

depression, severe paranoia, severe digestive issues, and incurable abdominal

pains," and his incarceration for "32 years and 7 months," 17 months of which

were allegedly the result of Defendants' refusal to advocate for his release.  (*See*

*Wershe II,* ECF No. 1, PageID.23-38).  The vast majority of these injuries accrued in

the 1980s, including Plaintiff's alleged physical and psychological injuries and his

sentencing and incarceration in 1987.  Plaintiff's latest claim accrued in 2003,

when he "would have been released on parole...if it had not been for the United

State [sic] attorney letter and the unsealing of [his] grand jury testimony."

(*Wershe II*, ECF No. 9-1, PageID.47, Wershe Affidavit).[5]

       Likewise, for Plaintiff's *Bivens* and § 1983 claims to be timely, they must

have been filed by 2006, three years after the accrual of his latest injury in 2003.

*Zappone*, 870 F.3d at 559.  *Wershe I* was not filed until July 20, 2021.  (*See Wershe*

*I*, ECF No. 1).  For Plaintiff's FTCA claims to be timely, an administrative claim must

have been presented to the appropriate Federal agency by 2005, two years after

the accrual of his latest injury in 2003.  28 U.S.C. § 2401(b); *Zappone*, 870 F.3d at

555.  Plaintiff did not file an administrative claim until July 19, 2021, and *Wershe II*

was not filed until October 28, 2022.  (*Wershe II,* ECF No. 1; ECF No. 6, PageID.88).

Likewise, Plaintiff's claims under the FTCA are untimely.  Because Plaintiff's claims

---

[5] Plaintiff's affidavit mirrors many of the central claims included in his complaint and, therefore, the court will consider this exhibit.  *See Ashh, Inc.*, 475 F. Supp. 3d at 678.

in both *Wershe I* and *Wershe II* were untimely under the relevant statutes of

limitations, they are barred and must be dismissed unless equitable tolling

applies.

        D.    <u>Equitable Tolling</u>

        Even if a plaintiff's claims are untimely under the relevant statute of

limitations, they may still be brought if they meet the standards for equitable

tolling. *Zappone*, 870 F.3d at 556; *see also Doe v. United States*, 76 F.4th 64, 71

(2d Cir. 2023) ("Under federal law…the accrual of FTCA and *Bivens* claims may be

subject to equitable tolling."). In general, equitable tolling is available "when a

litigant's failure to meet a legally-mandated deadline unavoidably arose from

circumstances beyond that litigant's control." *Id.* (citations omitted). However,

equitable tolling is available only in "rare and exceptional circumstances." *Doran

v. Birkett*, 208 F.3d 213 at *2 (6th Cir. 2000). The plaintiff bears the heavy burden

of showing he is entitled to equitable tolling. *Davis*, 2016 WL 5720811 at *8

(citing *Abbas v. Dixon*, 480 F.3d 636, 642 (2d Cir. 2007) ("The plaintiff bears the

burden of showing that the action was brought within a reasonable period of time

after the facts giving rise to the equitable tolling or equitable estoppel claim have

ceased to be operational…")).

Historically, the Sixth Circuit has utilized a five-factor test to determine

whether equitable tolling applies to a claim.  *Zappone*, 870 F.3d at 556.  These

factors are:

> (1) the plaintiff's lack of notice of the filing requirement;
> (2) the plaintiff's lack of constructive knowledge of the filing
> requirement;
> (3) the plaintiff's diligence in pursuing [their] rights;
> (4) an absence of prejudice to the defendant; and
> (5) the plaintiff's reasonableness in remaining ignorant of the
> particular legal requirement."

*Jackson v. United States*, 751 F.3d 712, 719 (6th Cir. 2014); *Zappone*, 870 F.3d at

556.  While these five factors are important considerations, they are neither

"comprehensive nor material in all cases."  *Zappone*, 870 F.3d at 556.  The Sixth

Circuit has further stated that "'a litigant's failure to meet a legally mandated

deadline' due to 'unavoidab[le]…circumstances beyond that litigant's control' is

often the most significant consideration in courts' analyses, rather than any

particular factor of the five part standard."  *Id.*; *see also Graham-Humphreys v.*

*Memphis Brooks Museum of Art*, 209 F.3d 552, 560-61 (6th Cir. 2000).

The Supreme Court has recently created a more streamlined, two-factor

test for equitable tolling in the habeas context.  *Holland v. Florida*, 560 U.S. 631,

649 (2010).  Under the *Holland* test, an individual is entitled to equitable tolling

only if he shows: "(1) that he has been pursuing his rights diligently, and (2) that

16

some extraordinary circumstance stood in his way and prevented timely filing."

*Id.*  The Supreme Court has not definitively ruled on whether this test applies

outside of the habeas context.  *See Menominee Indian Tribe of Wisconsin v.*

*United States*, 577 U.S. 250, 257 n.2 (2016) ("*Holland v. Florida…* is a habeas case,

and we have never held that its equitable-tolling test necessarily applies outside

the habeas context…because we agree that the Tribe cannot meet *Holland*'s test,

we have no occasion to decide whether an even stricter test might apply to a

nonhabeas case…").  However, other circuits, including the Second Circuit, have

directly applied this test to equitable tolling claims involving a reasonable fear of

retaliation.  *Doe*, 76 F.4th at 71 ("Before a court may exercise discretion to grant

equitable tolling, a litigant must demonstrate as a factual matter the existence of

two elements: first, 'that some extraordinary circumstance stood in [her] way'

and second 'that [she] has been pursuing [her] rights diligently.'") (citations

omitted).

The Sixth Circuit has expressly declined to adopt the *Holland* test more

broadly, noting that the Supreme Court has never adopted it outside of the

habeas context.  *Zappone,* 870 F.3d at 556.  In *Zappone v. United States,* the Sixth

Circuit noted that, because they had previously utilized the five-factor test, the

"law-of-the-circuit doctrine" precluded them from replacing it with the Supreme

Court's new two-factor standard.  *Id.*  The Sixth Circuit has also recognized that

equitable tolling "must necessarily be determined on a case by case basis" and

held that "both standards can inform our evaluation" because "the two

approaches are quite compatible and may often lead to the same result."  *Id.*

Likewise, the court will analyze all of the relevant factors from both tests to

address the timeliness of Plaintiff's claims.  Because these factors all weigh

against equitable tolling, Plaintiff's claims indeed fail under either approach.  *See*

*id.* at 557 ("under either approach, the Zappones fail to meet the requisite burden

to excuse the untimeliness of their state-law claims.").

### i.  Knowledge and Notice

The court will first look at the knowledge and notice factors of the Sixth

Circuit's five-factor test: factors one, two and five.  Factor one asks the court to

consider "the plaintiff's lack of notice of the filing requirement," factor two asks

the court to consider "the plaintiff's lack of constructive knowledge of the filing

requirement," and factor five asks the court to consider "the plaintiff's

reasonableness in remaining ignorant of the particular legal requirements."

*Jackson*, 751 F.3d at 719.  Defendant United States argues "Wershe cannot argue

that he was unaware of the requirement to file a…claim until July 2021, because

he's had multiple attorneys who were aware of his allegations regarding Dixon,

Groman, Helland, and King." (*Wershe II,* ECF No. 6, PageID.89).  The court agrees.

Plaintiff has never suggested that he was unaware of the required deadlines or

timing requirements.  *See Jackson*, 751 F.3d at 719 (finding these factors weighed

against equitable tolling when the court could reasonably ascertain that

"[plaintiff] and her counsel were aware of the relevant provisions in the FTCA

governing when a claim could be filed.").  Rather, he has emphasized that he

failed to file his cases earlier because he was "terrified of his captors…and the

hopelessness inevitably instilled by his sentence of life without parole sapped the

'fight' out of him the entire time he was incarcerated." (*Wershe I*, ECF No. 4,

PageID.97).  Accordingly, these three factors weigh against equitable tolling.

       ii.    *Prejudice*

     Factor two of the Sixth Circuit's test asks the court to analyze whether

there is an "absence of prejudice to the defendant." *Jackson*, 751 F.3d at 719.

Defendant United States specifically argues: "[t]here is undeniably prejudice to

the United States by Wershe's delay since his claims are now decades old.  It is

unlikely that Defendant will be able to find relevant documents, or that witnesses,

if still alive and able to be located, will recall details to rebut Wershe's

allegations." (*Wershe II,* ECF No. 6, PageID.89).  Again, the court agrees.  The

individually named *Bivens* Defendants have all since retired or passed away, and

any other parties who may have witnessed actions relevant to this case are likely

to be difficult to locate.  The key allegations in this case occurred in the 1980s,

over 40 years ago.  Even the most recent alleged injuries occurred 20 years ago.

While some of the relevant evidence will be easy to find, and has since been

provided to this court, there is likely a substantial amount of evidence that will be

extremely difficult, if not impossible, to uncover given the length of time since

Defendant's injuries.  Likewise, this factor weighs against applying equitable

tolling.

iii.    *Diligence*

Under both the Sixth Circuit's five-factor test and the Supreme Court's two-

factor test, the court must determine whether a plaintiff "has been pursuing his

rights diligently."  *Jackson*, 751 F.3d at 719; *Holland*, 560 U.S. at 649.  The

diligence required for equitable tolling is "reasonable diligence... not maximum

feasible diligence."  *Holland*, 560 U.S. at 653.  Additionally, when a claim for

equitable tolling is based on a reasonable fear of retaliation, the diligence prong

also asks whether the plaintiff acted diligently to seek protection from the feared

individuals.  *Davis*, 2016 WL 5720811, at *11 ("The court would be hard pressed

to conclude that Plaintiff exercised reasonable diligence in pursuing his rights if,

for the entire time Plaintiff alleges he faced a threat of retaliation, he did nothing

20

to seek protection from that threat of retaliation."); *see also Clark v. Hanley*, No.

3:18-CV-1765, 2022 WL 124298, at *5 (D. Conn. Jan 13, 2022) (finding plaintiff did

not meet the diligence prong where she "never reported any of the alleged insults

made to her by any officers.").

Plaintiff argues that he acted diligently because he "filed this action almost

one day before his parole officially ended."  (*Wershe I*, ECF No. 40, PageID.826).

However, Plaintiff has failed to allege any additional facts showing he acted

diligently over the course of his 32-year incarceration when he allegedly suffered

a fear of retaliation "from Defendant's [sic] who could influence his situation, no

matter what prison he was in."  (*Wershe II*, ECF No. 9, PageID.123).

The court finds that Plaintiff has not met his burden to show that he acted "as

diligently as reasonably could be expected," where he did not take any action to

file a claim or seek protection from the alleged threats of retaliation during his

lengthy prison sentence.  Plaintiff has not provided any evidence that he

discussed his fear of retaliation or any concrete threats with his attorneys, prison

officials, or any other individuals from various state or federal law enforcement

agencies.  In fact, Defendants highlighted that Plaintiff filed a number of other

lawsuits against "powerful individuals" while he was in prison, including an

unsuccessful appeal of his 1988 cocaine conviction, a lawsuit against the parole

board, and a lawsuit against his Michigan prison warden. (*Wershe I*, ECF No. 34, PageID.457-58). While these lawsuits did not directly involve any of the named Defendants and did not allege a similar theory of liability, they indicate that Plaintiff had access to the legal system and did not fear bringing cases against individuals in power.

In analyzing diligence, "[w]hat could reasonably be expected from a plaintiff depends, of course, on the nature of the circumstances [he] faces." *Doe*, 76 F.4th at 73. Plaintiff argues that, under the circumstances of this case, his fear not only existed while he was incarcerated, but "continued for one year thereafter while Plaintiff was on parole." (*Wershe II*, ECF No. 9, PageID.123). Likewise, because he filed *Wershe I* "the day before (not after) his Michigan probationary period ended and his 'reasonable fear of retaliation' abated," he acted diligently. (*Wershe I*, ECF No. 72, PageID.1402). However, the filing of his case one day before the end of his parole does not excuse 32 years of general inaction. As such, this factor weighs against equitable tolling.

### iv.   Extraordinary Circumstances

The Supreme Court's two-factor test next asks the court to consider whether "extraordinary circumstances" stood in the plaintiff's way and prevented timely filing. *Holland*, 560 U.S. at 649. Plaintiff relies heavily on *Davis v. Jackson*

22

to argue that his claims should be subject to equitable tolling due to the

extraordinary circumstances surrounding his reasonable fear of retaliation.

(*Wershe I,* ECF No. 4, PageID.83).  In *Davis*, the plaintiff sought to challenge the

outcome of his prison disciplinary hearings wherein he was found guilty of drug

possession and various other offenses.  *Davis*, 2016 WL 572081 at *2-3.  The

plaintiff conceded that his claims were not timely, but argued they should be

subject to equitable tolling because "he was in 'fear of retaliation

by…[D]efendants [which] prevented him from filing his [claims] in a timely

fashion."  *Id.* at *8.  The court held that "in the prison context, reasonable fear of

retaliation may be sufficient to constitute extraordinary circumstances warranting

equitable tolling, particularly if the person threatening retaliation is a defendant

or another official who could be or was influenced by a defendant."  *Id.* at *11.

However, the court also cautioned that "…certainly not all inmates are entitled to

equitable tolling.  Generalized allegations of fear of retaliation, therefore, are not

sufficient to establish 'extraordinary circumstances' warranting application of

equitable tolling."  *Id.* (citing *Nicoloudakis v. Bocchini*, No. 13-CV-2009, 2016 WL

3617959, at *3 (D.N.J. July 1, 2016) ("Generalized fear of reprisal is not enough to

warrant equitable tolling…")).  As an initial matter, *Davis* is an unpublished case

from the Southern District of New York and is not binding on this court.  However,

because neither the Sixth Circuit nor the Michigan courts have directly addressed the issue of equitable tolling due to a fear of retaliation, the reasoning in *Davis* is persuasive. *See U.S. v. Flores,* 477 F.3d 431, 433-34 (6th Cir. 2007); *Smith v. Astrue*, 639 F. Supp. 2d 836, 841 (W.D. Mich. 2009) ("like judges throughout the Sixth Circuit, this court regularly discusses nonprecedential decisions when they can illuminate an issue.").

Plaintiff alleges, consistent with the holding in *Davis*, he suffered from a reasonable fear of retaliation "based on actual threats and instances of retaliation" from a number of the Defendants. (*See Wershe I*, ECF No. 19, PageID.240). On his first day in prison, Plaintiff alleges that he witnessed an attempted retaliatory assassination when one prisoner stabbed another prisoner in the neck. *Id.*, PageID.245. After the stabbing, a guard allegedly said to him "get ready, Wershe, that happens every day in here." *Id.* Plaintiff also alleges that, after agreeing to assist with "Operation Backbone," he was moved to a higher security prison and given a false identity for fifteen years because even the AUSAs "were afraid that members of Detroit law enforcement or politics would try and have him killed if they found out he was working against them." *Id.*, PageID.246. Plaintiff claims that his attorney, William Bufalino, told him directly not to attempt legal action against any of the law enforcement officers for fear of

retaliation in the form of losing any chance at being released from prison or direct violence. *Id*. Defendant has repeatedly emphasized that the "powers that be" in the Detroit political community could have retaliated against him at any time.[6] (*See Wershe I*, ECF No. 70, PageID.1377).

While the court recognizes the complicated and unique nature of Plaintiff's circumstances, his allegations do not rise above a "generalized fear of retaliation" such that he should be entitled to equitable tolling. *See Davis*, 2016 WL 5720811, at *11. While Plaintiff may have witnessed a retaliatory stabbing on his first day in prison, the guard's statements did not directly implicate or threaten Wershe personally and he has not alleged he was at risk of retaliatory violence from another prisoner or guard any more than the average prisoner. This stands in contrast to the facts of *Davis*, where the plaintiff was directly warned by a defendant to "not to get comfortable" upon his return to the prison. *See Davis*, 2016 WL 5720811, at *11. The plaintiff in *Davis* also alleged that a false misbehavior report was filed against him, he was told by one prison official "I

---

[6] Plaintiff also points to a number of alleged threats from prominent politicians and law enforcement officers in the City of Detroit, including his attempted assassination, the fact that his conviction was the result of allegedly falsified evidence, the fact that he was "beaten [] brutally" by law enforcement upon his arrest, and the fact that Detroit Mayor Coleman Young called Plaintiff a "stool pigeon." (*Wershe I*, ECF No. 19, PageID.269-70). However, Plaintiff has failed to establish how any of these actions could be directly attributed to the Defendants in this case or how the responsible individuals could have been directly influenced by the Defendants.

hope you're not going to write me up for this because I know about you," and he

was threatened by another prison official who told him "you know weapons can

be found in your cell." *Id.*  Additionally, the fact that Plaintiff participated in a

prison witness protection program, was relocated to an unknown prison, and was

given a pseudonym that would have been unknown to the Defendants, actually

makes it *less* likely that he would have been retaliated against.  Finally, while

Plaintiff alleges that his attorney counseled him against filing any claims for fear

of retaliation, reliance on an attorney's advice in these situations has previously

been found to be insufficient for equitable tolling purposes.  *See Fox v.*

*Lackawanna Cnty.*, No. 3:16-CV-1511, 2017 WL 5007905, at *10 (M.D. Pa. Nov. 2,

2017); *Rockmore v. Harrisburg Prop. Serv.*, 501 Fed. Appx. 161, 164 (3d Cir. 2012)

("Attorneys' mistakes are generally attributable to their clients, and mere

negligence by an attorney is not generally found 'to rise to the 'extraordinary'

circumstances required for equitable tolling.'").

Plaintiff has also not alleged any facts tending to show that he was still at

risk for retaliation after he was granted parole, released from the Michigan prison

system, and transferred to the Florida prison system in 2017.  Plaintiff argues that

he technically remained in custody by way of his parole while he was in prison for

five years in Florida and was "afraid that he could be 'reimprisoned' at any time

after his release, on falsified charges." (*Wershe I*, ECF No. 40, PageID.835).

Plaintiff also claims his fear of retaliation persisted because "the powers that be"

ensured he was placed in solitary confinement for 16 months in the Florida

prison. *Id*. However, he provides no plausible facts to suggest any of the

Defendants could have exerted control in the Florida prison system or had any

means to retaliate against Plaintiff while he was incarcerated there. While

Plaintiff demonstrated that he *subjectively* feared retaliation by the Defendants

and other individuals in the Detroit law enforcement community[7], he has not

alleged any actual threats or circumstances that would create an *objectively*

reasonable fear of retaliation. *See Goodlow v. Camacho*, No. 3:18-CV-0709-CAB-

MDD, 2020 WL 5709255, at *9 (S.D. Cal. Sept. 24, 2020) ("a plaintiff must show

both an objective and subjective basis for a reasonable fear of retaliation.").

　　Plaintiff argues that the fact that he cannot point to direct threats made by

any of the Defendants is not fatal, because *Davis* merely stands for the principle

that "inmates *may* show extraordinary circumstances for purposes of equitable

tolling where they allege specific facts showing that a reasonable fear of

retaliation prevented them from filing a timely complaint." (*Wershe I*, ECF No.

---

[7] Defendant relies heavily on a report completed by Dr. Larry M. Friedberg, Ph.D. to argue that his fear of retaliation was real. (*See Wershe I,* ECF No. 19-3). However, because this report presents information that is outside the central allegations of his complaint, it cannot be considered at the motion to dismiss stage. *See Ashh, Inc.*, 475 F. Supp. 3d at 678.

72, PageID.1396; *Wershe II,* ECF No 9, PageID.123).  However, other courts that

have analyzed equitable tolling based on a reasonable fear of retaliation have

specifically looked for actual threats or instances of harm at the hands of the

defendants.  *Doe*, 76 F.4th at 72 (finding a reasonable fear of retaliation where

Plaintiff "testified that [Defendant] violently raped her on a regular basis for a

period of seven years, scarred her with acts of physical violence, treated her like

his 'slave,' and threatened to further harm and even kill her."); *Gabbidon v.*

*Wilson*, No. CV 1:19-00828, 2021 WL 625232, at *9 (S.D.W. Va. Feb 17, 2021)

(finding equitable tolling applied where the plaintiff alleged "defendant

threatened plaintiff in an effort to ensure her silence, which included gathering

data on her family and stating that he could affect her immigration status," and

telling plaintiff "to stop whatever it is that she's filing...because they [were]

watching [her]...").  Allowing an individual to satisfy the test for equitable tolling

based solely on their subjective fear of retaliation without any concrete evidence

of threats or actual retaliatory actions on behalf of the defendants would

impermissibly broaden the equitable tolling analysis.  *See Doran*, 208 F.3d at *2

(emphasizing that equitable tolling is available only in "rare and exceptional

circumstances.").

The court agrees with Plaintiff that the circumstances underlying his case are unique.  However, "[w]hether a plaintiff faced extraordinary circumstances depends not on 'the uniqueness of a party's circumstances,' or the outrageousness of what they endured, 'but rather…the severity of the obstacle impeding compliance with a limitations period.'"  *Doe*, 76 F.4th at 72 (citing *Smalls v. Collins*, 10 F.4th 117, 145 (2d Cir. 2021) (quoting *Harper v. Ercole*, 648 F.3d 132, 137 (2d Cir. 2011))).  The crux of the extraordinary circumstances test is whether a plaintiff can allege "specific facts showing that a reasonable fear of retaliation prevented them from filing a timely complaint."  *Davis*, 2016 WL 572081, at *11; *see also Stone #1 v. Annucci*, No. 20-CV-1326) RA, 2021 WL 4463033, at *12 (S.D.N.Y. Sept. 28, 2021).  Plaintiff has failed to do so.

Deciding whether equitable tolling applies in a case is a "discretionary 'exercise of a court's equity powers.'"  *Doe*, 76 F.4th at 71 (citing *Holland*, 560 U.S. at 649).  The law prohibits a judge from exercising their discretion to find equitable tolling where required elements, including extraordinary circumstances and diligence, are missing.  *Id.*  As discussed above, all of the factors in both the Sixth Circuit's test and the *Holland* test weigh against finding equitable tolling. Despite Plaintiff's request, the court cannot forego the legal requirements and grant relief where it is not merited.

IV.     **CONCLUSION**

Plaintiff's allegations affirmatively show that his claims are time-barred and must be dismissed.  *See Cataldo v. U.S. Steel Corp.*, 676 F.3d 542, 547 (6th Cir. 2012).  Likewise, Defendants' motions to dismiss (*Wershe I,* ECF Nos. 8, 34; *Wershe II*, ECF No. 6) are **GRANTED** as to the statute of limitations issue, and both *Wershe I* and *Wershe II* are **DISMISSED** with prejudice**.[8]**  The remaining motions in both cases (*Wershe I*, ECF Nos. 48, 55; *Wershe II*, ECF No. 10) are **DENIED** as moot.

**SO ORDERED**.

Date: September 18, 2023              s/ F. Kay Behm
                                     F. Kay Behm
                                     United States District Judge

---

[8] Defendants' motions to dismiss are granted insofar as Plaintiff's claims are barred by the statute of limitations.  This opinion should not be taken as a ruling on the merits of any of the other substantive claims included in these motions.